The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following question: What legal guidelines must the Oklahoma State Credit Union Board employ in considering applications for expansion of credit union membership? The Oklahoma State Credit Union Board "Board" is established pursuant to 6 O.S. 2001.1 [6-2001.1] (1974). The Board exercises the powers that, prior to 1974, were exercised by the Bank Commissioner and which are by 6 O.S. (1974) Chap. 2, delegated to the Board. See 6 O.S. 2001.2 [6-2001.2] which authorizes the Board: ". . . to promulgate rules and regulations to carry out the laws of this state concerning credit unions." 6 O.S. 2006 [6-2006](7) provides that a credit union shall have the power to amend its bylaws in the manner provided by the bylaws, but that all amendments to the bylaws must be submitted to and approved by the Board before they become operative. Credit unions are cooperative nonprofit organizations existing for the purpose of promoting thrift among its members, and providing a source of credit for them at legitimate rates of interest for productive purposes, 6 O.S. 2001 [6-2001] (1971). Throughout the United States their field of membership has been limited by the "common bond" principle. Title 6 O.S. 2007 [6-2007] (1974), specifies that credit union membership consists of the incorporators and such other persons, including incorporated and unincorporated organizations, as may be elected to membership. Each member shall subscribe to at least one share of its stock and pay the entrance fee. 6 O.S. 2007 [6-2007] then sets forth restrictive language limiting the field of credit union membership. The restrictive language begins with the word "except," and continues: ". . . credit union membership shall be limited to groups having a common bond of occupation or association . . . ." The Board has the power and duty to rule upon an amendment to the bylaws of a credit union expanding its field of membership. That duty necessitates the adoption of Board statements of general applicability and future effect relating to the statutes which the Board is required to implement, pursuant to 75 O.S. 301 [75-301](2)(5) (1978), 75 O.S. 303 [75-303] — 75 O.S. 308 [75-308]. The implementation of 6 O.S. 2007 [6-2007] [6-2007] (1971), does not include the liberty to disregard explicit statutory language. Irrespective of what "common bond" may or may not mean to those charged with administering the credit union laws of other states, that term is modified by statute in Oklahoma. Credit union membership is limited by 6 O.S. 2007 [6-2007] to groups having a "common bond of occupation or association." In individual proceedings, the Board must be cognizant of the preliminary findings which must be entered of record: 1 What is the common bond of occupation or common bond of association now existing in the credit union? 2 What is the common bond of occupation or association of the individuals comprising the group sought to be included in the membership? 3 What is the common bond of occupation or association between the existing membership and the individuals comprising the group sought to be added to membership? Unless the Board is justified in finding that such common bond of occupation or common bond of association exists, there is no predicate for a conclusion that the members of that credit union will continue to have a "common bond" as that term is used in 6 O.S. 2007 [6-2007]. Such findings and conclusion are essential to individual proceedings which necessarily include the procedural requisites set forth in 75 O.S. 309 [75-309] (1971), for their validity. It is, therefore, the official opinion of the Attorney General that the Oklahoma State Credit Union Board must determine the extent to which a credit union is permitted by 6 O.S. 2007 [6-2007] (1974), to expand its field of membership. In individual proceedings the Board must determine: 1 What is the common bond of occupation or association now existing in the credit union? 2 What is the common bond of occupation or association of the individuals comprising the group sought to be included in the membership? 3 What is the common bond of occupation or association between the existing membership and the individuals comprising the group sought to be added to membership? (JOHN PAUL JOHNSON) (ksg) ** SEE: OPINION NO. 93-538 (1993) **